The last case on the argument calendar is Century Surety Company v. Metropolitan Transit Authority, Epcot. Please stand by. Please be seated. Good morning, Your Honors. May it please the Court, my name is Connie Gaines, and I represent the appellants in this matter. We submit that New York law holds that a contractual indemnity policy, both primary and excess, are first in line and must be exhausted before any policy issued to a contractual indemnity is reached, regardless of the policy's other insurance provisions. With respect to the District Court opinion and override issue in the matter, the District Court granted summary judgment in favor of the appellee, Century Surety Company, and held that the Century policy issued to Brooke was excess over all other applicable policies, including analyst policy that was issued to the Long Island Network Company. In reaching this conclusion, the District Court looks only to the terms of the Century policy itself. We submit that the District Court erred in considering the other insurance policy terms in isolation in determining priority of coverage, first because the District Court relied on case law that had been inducted by New York. Rather, the District Court should consider the impact of Brooke's contractual obligations to Long Island Network in determining priority of coverage. Your position is that—and correct me if I'm wrong—that Judge Furman misapplied or misunderstood indemnity insurance? Correct. So we are arguing that— Is that the controlling statement of New York law? We're saying that he applied the incorrect law to his determination in reaching—granting summary judgment to Surety Company. But on the case law, you're saying that he misunderstood the indemnity insurance case from the Appellate Division— Yes, that's correct. —and this Arch case just came out after the decision, so he wouldn't have had the benefit of that. Correct. Yes, he did apply indemnity insurance. Correctly, we believe that the Emerald policy would have not gone first—the Century policy would have gone first. Right. And you don't—but you don't dispute that there is New York State case law going both directions. So if you rely on the Bovis-Ledleys case or the Tishman Construction Corporation, that would go against your position, right? I'm sorry. Our argument— Sorry, the Bovis case and the Tishman case, both of those go in the opposite direction, right? Well, with respect to the Bovis case, it was a 2008 case brought from the First Department, and the ruling and the reasoning in Bovis has been overruled by the indemnity case and the Arch case. They don't—you say—they don't even mention Bovis. It's kind of an unusual situation where they don't address Bovis. You say overruled it. They're just conflicting. I don't know if we could say they overruled it, right? They didn't even acknowledge it. Your Honor, yes. We would suggest that—so in the Bovis opinion itself, it did discuss priority of coverage analysis, and in that opinion, it did discuss that there could be reference to a trade agreement in determining priority of coverage if the policy itself specifically referenced that trade agreement. In the Bovis court, it went through each of the different policies, and there were two excess policies at play there. There was the United policy and the Westchester policy. In brief, the United language policy stated that the insurance was excess over another insurance, and in the Westchester policy, it stated that if there was other collectible insurance, then the insurance provider would apply excess and not contribute. In determining that these provisions—in determining priority of coverage in the Bovis opinion, the court stated that since these provisions did not reference the trade agreement, that they would not be used in determining priority of coverage. And in your case, you don't have a reference to the trade agreement, right? Exactly. So in indemnity and in arch, I argue that they implicitly overruled Bovis because in both indemnity and arch, neither of the excess policy provisions appear to specifically include reference to— Right, but whether they implicitly—I mean, I don't know this question, but I don't know if they can implicitly overrule a prior decision. But the point is they conflict, right? These cases point in different directions. They do conflict, but the indemnity case was in 2010 and the arch case was in 2019. So you just think that when we're predicting how the state courts would rule, we should look at the latest cases? We're saying yes to that. The facts are similar enough that the provisions that they looked at in Bovis case and the excess policy and arch and indemnity, since they didn't reference the trade agreement, the more recent courts that looked at that case decided that the way that the Bovis court approached it was incorrect as they used different reasoning and did reference the trade agreement regardless of the fact that the insurance— But you extrapolate that from what case? I'm sorry, Your Honor? You extrapolate what you just said from what case? I'm extrapolating that based off of the indemnity case and the arch case, the excess provision, the excess policies don't specifically reference the fact that there's reference to a trade agreement as compared to in Bovis, that they also stated that there was no specific reference to a trade agreement and therefore did not address the indemnity— In fact, they say even though there isn't—I mean, there isn't any kind of discussion of a reference to a trade agreement, but it says because of the contractual indemnification, the coverage is going to go back to the indemnifier's coverage automatically. So it doesn't matter whether there's a reference to the indemnification. I would say that depending on an issue, since the Bovis court only looked to the policy language itself and did not look to the trade agreements amongst the parties, then the way that the policies were prioritized was based off of the language of the policies themselves and wouldn't necessarily allow for the tax liability to the indemnifier from the indemnity. So what about this—the only case we have from the New York Court of Appeals is this Lamoro case, which just says we need to rely on the policy language, and it doesn't talk about a trade agreement. Why doesn't that tell us to rule against your position? I would say that the Lamoro case, exactly to your understanding, does not discuss trade agreements. It doesn't discuss indemnity agreements. It's dealing with auto policy and then how they stack up amongst each other. It is providing a framework for how courts should prioritize coverage in that particular context. It's not dealing with the specific factual context here, and you want insurers that are indemnifying each other in a construction context. So I don't—yes, sir? Go ahead. Finish your response. I would say that the cases feel complex enough that today Lamoro isn't controlling in this particular instance because it's actually distinguishable because it does not include indemnity agreements, whereas the Arch case and the indemnity case do include indemnity agreements and specifically change the general rule that Lamoro lays out that you only go to the policy language. If the policy language had explicitly said this is excess coverage and it only applies after even the owner's insurance is exhausted, then you wouldn't dispute that we should go the other way, right? It's not impossible for policy language to point to the owner's insurance, is it? I would say that it's not impossible, but what Arch and indemnity say is that the other insurance provisions themselves shouldn't control because the indemnity agreements are meant to basically create this pass-through liability. So the party that is shouldering the liability should be—their insurance policies should come first. And for instance, the century policy is excessive by its terms, and it did get the benefit of being excessive because the Arch policy, the primary policy, went before it. So it is getting the benefit of the policy terms. And I suppose you might say, and if we decided it the other way, then the owner is not getting the benefit of the indemnification. Is that right? Perhaps, yes. And in the Lamoro case, the Eighth Circuit case, kind of discusses this in that it's basically creating— Okay, given the fact that you've got cases both from the First Department and in New York pointing in different directions, what, in your view, is the law in New York on this point and why? I would say that the law in New York is in the most recent cases that the First Department has been—with priority coverage, but indemnity agreements are involved. So you say it's indemnity, and your reason is that it's just the most recent in time, right? They are the most recent in time, Your Honor, yes. But I would say that since the fact pattern in terms of the excess policy provisions themselves in the Bogus case and then the Arch and Indemnity case are similar or not with that, the courts implicitly did reject that reasoning because— How can you tell that? What's the basis for that? Only because of the facts of that, even though it does not directly address it. But the First Department didn't—and Indemnity didn't have a warrant to overrule prior First Department cases, right? Correct, yes. I'm just considering— So what are we to do with this? Well, Indemnity does cite the Tishman case, right, and purports to be consistent with the Tishman case. It cites the principle from the Tishman case that the language of the policy is what's decisive for excess insurance. But then it says here, however, priority of coverage is irrelevant. So I guess your argument might be that at least we have a case from the New York State courts that acknowledges the earlier rule but then still says that the indemnification provision overcomes it, right? Is that right? Yes. Yes, Your Honor. I would also say that I understand that there is the fact that it's not expressly overriding coverage. I understand that. But I would say that those cases are from Indemnity's most recent cases, as well as the circuit court cases and a federal case, a New York federal state court, federal court that addressed this. But the federal case is just citing all these New York cases. It doesn't have any independent guidance as to how the New York state courts are going to decide this, right? Okay. We could certify this to the New York Court of Appeals, right? Yes. Let me just ask you. Did you think we should? What's your position on that? I'm not sure I know that at this time. Okay. Let me just ask you to make sure I understand how New York insurance works. If we affirm the ruling here, what would then happen, the next step would be Admiral would stand in the shoes of the city, sue Rook under the Indemnity clause, and if that clause is valid, would get the money from Century in that manner, because Arch has already paid, right? So then either way, Century is going to have to pay this money. Yes? Or am I missing something? I would say that since the district court in determining that the Century policy came after the Admiral policy, there was never an adjudication whether the Century policy provides coverage. So we would need it to be reversed as to allow the two declaratory judgments that were pending in terms of Century's obligations to the underlying act. I don't understand that. All the district court just said is that this is excess. Correct. So why couldn't Admiral stand in the shoes of the city, sue Rook under the Indemnity clause, and then Century would have to pay because Arch, the primary is gone, Arch has paid, so Century would then have to pay, right? But the case that talks about this, the cases that go in your favor say there's no reason to have this two-step process where there's a second lawsuit to enforce the Indemnity provision. We're going to do it all at one time. That's what some of the cases say. So I'm just pointing that out, right? Ultimately, Century is going to have to pay. Even if we affirmed, ultimately they would have to pay. If a separate suit was brought to enforce the Indemnity clause, or am I missing something? Well, the underlying – there were – yes, there were underlying cost payments in terms of that, but there would still need to be an adjudication that the Century policy, as Century – Because Century claimed that it shouldn't have – even if its policy applied, it wouldn't have to cover this. But that would have to be adjudicated in either case. If we affirmed, then it might come up in the scenario Judge Bianco is describing, but even if we reversed and we said that the insurance coverage now goes to Century, Century would still have the opportunity to say that it's not covered by its policy. So that would have to be litigated in either case. So my point is in ruling in your favor, it would just be – it would all be done in one case as opposed to having a separate lawsuit need to be brought, right? Yes. I mean, there was an underlying case – I mean, an underlying settlement in terms of what claims to be brought in terms of the parties. But, I mean, I agree that Century could be paying regardless of how we wanted to proceed, but I would say that, yes, we still need an adjudication regardless in terms of whether Century's disclaimer was proper, and that was never addressed in any of the nine cases of the priority. All right. Thank you very much, Ms. Hayes. We reserve two minutes for rebuttal. Mr. Cohen. May it please the Court, Dan Cohen on behalf of Century. Since 1985, our stateside court in Lamarra has made it quite clear that when determining barrier coverage, all you need to do is look to the policy. Lamarra didn't involve indemnity agreements. It was a car accident case, so I don't see that as providing much guidance at all. It provides – with respect to Your Honor, it provides the guidance for virtually every case that has followed Lamarra, including two recent cases from the Eastern District in March of 2021 and the Northern District in June. Do they involve indemnity agreements? Do they involve – Yes. Indemnity agreements? They did, and in those cases, the courts made it very clear that when you're looking at insurance policies and indemnity agreements, the insurance policy question is decided based on the language of the insurance policy, not on the basis of the indemnity agreement. Now, Your Honor suggested that perhaps there could be some other subsequent proceeding beyond the indemnity agreement, and if so, let it go forward. But this case only deals with the priority of coverage between and among insurance policies, and our brief has cited a number of cases that stand for that very same proposition, that when you look at insurance policies, you look at insurance policies. Indemnity agreements are separate things. What about indemnity and ARCH? The two cases that were cited, indemnity agreement, indemnity insurance of North America, Judge Gerber got exactly right. What he said was in those cases, what happened was the subcontractor's carrier had accepted coverage, had accepted the responsibility. I don't know that he said that, but I don't see that in the case, so I'm looking at indemnity, and there are a couple points about it. It says Romano and its insurer Royal, that's the primary insurer, not the excess insurer, unconditionally without reservation agreed to defend and indemnify the city. So it's not even saying that the excess insurer agreed to anything. But then when it's talking about when it made that agreement, what it's talking about is the indemnification. Like the next sentences immediately following that statement are describing the contractual indemnification, right? It's saying Paul Griffin of the city was entitled to contractual indemnification from Romano with a complete pass through liability to Romano and its insurers Royal and indemnity. So its whole argument is that the way in which it agreed to this coverage was through a contractual indemnification provision, isn't it? The court found in that case that the subcontractor's insurer unconditionally and without reservation agreed to… Yeah, I understand. I'm reading that sentence from indemnity, and I'm saying when it says that, it's describing a contractual indemnification provision that's signed by the contractor. And that's exactly what we have here. What it said was in that case the carrier made a conscious decision to accept responsibility. Yeah, but it doesn't mention indemnity insurance company agreeing to anything. It says that the contractor and the primary insurer agreed to the indemnification, and therefore you should go to the contractor's excess insurer. So why isn't that the same thing here? You're the contractor agreed to an indemnification, and so the contractor's excess insurer needs to provide coverage before you go to the owners. Here we have a simple question involving the priority of coverage between a primary policy and an excess policy. You know, that begs the question of the effect of the contractual indemnity. I'm sorry, sir. That begs the question of the effect of the contractual indemnity. The contractual indemnity claim, Your Honor, is a separate and distinct question. I can give you a state court case that speaks to that. There's a case called Hollisville v. Travelers. It's a Fourth Department case. In that case, the fellow division Fourth Department looked at the issue of coverage priority and found that in that particular case, there was a determination made of coverage priority. It then said the parties can then, if they have an indemnity agreement, they can then go and enforce that indemnity agreement. Okay? Separate and distinct analysis. There is no analysis. There is no court, I would suggest, that has overruled Lamora, that has said that when you look at insurance policy— But as we just said, Lamora doesn't deal with an indemnification. Let me just read a little bit from the indemnity insurance case. It cites the principle that you're talking about. It says, when determining priority of coverage among different insurers covering the same risk, the court must consider the intended purpose of each policy as evidenced by both its stated coverage and the premium paid for it, as well as the wording of its provision concerning excess insurance, quoting from Tishman. Here, however, priority of coverage is irrelevant. Even if St. Paul's coverage of the city were primary to that of indemnity, the city's liability still would pass through to Romano and its insurers, Royal and Indemnity. And that's because of the indemnification provision, right? So, like, so this decision—I know that there are cases that point in the other direction that are previous to this case. But in this case, the Appellate Division, First Department, is saying that when there is an indemnification provision, we apply the excess policy of the indemnifier before applying the excess policy of the indemnifying. Right? I was correct in this reading. So it's not what this says? No, it's not. So I just read it. So why am I misreading what it says? Because in that case, there was an agreement as part of an overall settlement to resolve the case that way. That's what the Court talks about. The Court—the part you read about that this—talks about the priority of coverage is the rule of law in New York and has been since 1985. And what about—ARCH says this. Since owners were entitled to contractual indemnification from S&J and a complete pass-through of liability, the nationwide umbrella policy issued to S&J must respond before the ARCH primary policy issued to the owners. I don't understand how you're trying to distinguish these cases. You could say they're wrong. There are other cases, but you're trying to distinguish them when their statements of New York insurance law are pretty broad. That's a secondary determination, Your Honor. That's a quality of the case. You have to look at the insurance policy by themselves. And then if there is an indemnity granted to enforce—if there is an indemnity granted to enforce, that's a separate and distinct determination. It doesn't affect the priority of coverage. Here, the same party— Can I ask you this question? So let's say we thought that these two cases did point in a different direction but acknowledged that there were these earlier cases that support the position that you're articulating. How should we navigate—how should we navigate that reality in predicting what the New York courts will say about this issue? And, again, I'm trying to repetitively—I'm short on time. But, again, there are subsequent cases that say the same thing out of the federal district courts that say the same position I'm taking. Those two cases are anomalies because of the agreement between the carrier—granted by the carrier to assume defense and indemnity. Look at the state national versus not quality case. That's the Eastern District case, March 29, 2021. Look at the I.R.S.N. Development Corporation case, Northern District, June 3, 1921. Both cases following— Well, we have to predict what the state courts would do, right? So that's what the federal courts are doing. So it is more important to look at the state court decisions. So I guess your argument is that these two later state court decisions are anomalous, and we should think about the other ones as being the rules. That's your argument. That's my argument. So won't we help you, both of you, by resolving this problem in one step rather than two? I'm sorry. I couldn't hear you. You're saying that this case strictly turns and falls on the terms of the policies. Yes, sir. And I think you said, but correct me if I'm wrong, that whether there is—whether that result is trumped by a contractual indemnity problem is a consideration for another day. Not an issue of trump. Not an issue of one beating the other, which is how I looked at the word trump. And you may use the word, you know, in a permit. Parties sometimes enter into indemnity agreements. I granted that. And those indemnity agreements can be enforced under the law. No issue there. But you're saying that that's not— That's not the issue. I think Judge Parker's question was if, in fact, there is an indemnification provision and it's just going to end up being the case that the owner's excess insurer is going to stand in the shoes of the owner and then sue for indemnification and your client is going to end up paying anyway, why is that a better system than just resolving it in one step rather than two? These are separate considerations. Courts have to—I respect this, but they have to distinguish between insurance policies and indemnity agreements. They're separate methods of risk management. One, they're related, but they have to be independently considered. The Harley-Clinton case— So, actually, I have a question about that. So if we are independently considering the language of the insurance policy, it says it's excess over and shall not contribute with any of the other insurance with a primary excess contingent or any other basis. It doesn't expressly say after the owner's insurance. So, obviously, it doesn't literally say—it can't literally mean it only applies after every other insurance policy in the world. It has to be after any other insurance policy that would cover this conduct, right? And so why shouldn't we think about which insurance policies are applicable in light of contractual indemnification? Again, you're merging two separate and distinct theories. But I'm not, right? So I think you would acknowledge that excess coverage is excess over other insurance policies that are applicable, right? Yes, indeed. So why wouldn't an indemnification provision be something that would help us decide which other policies are applicable? Because indemnification agreements respect who you are on non-insurance policies. They're indemnity agreements. They live in a universal trade contract between and among the parties to the policy. They have nothing to do with— I understand, but if your client were arguing my policy is excess to some other policy, and it turns out the other policy you're pointing to belongs to some third party that had nothing to do with the underlying conduct, you wouldn't say that that was an applicable policy, right? So we would take account of facts in the world about who owns that policy, deciding whether it's applicable. No question. My question is why isn't the indemnification agreement one of those facts in the world that tells us which insurance policies are applicable? Because it would be—respectfully, the answer is simple. It isn't an insurance policy. Insurance policies live in their own universe. They live in a universe of other insurance policies that are applicable to a law's. Indemnity agreements, trade contract agreements, are separate and distinct avenues. And they have to be resolved separately and distinctly. If they think they have a trade contract indemnity, tell them to bring it on. This case settled. It settled without the underlying policies that are applicable to this law's being exhausted. That's what Judge Berman found. Judge Berman said, look, you know, there's applicable policies below yours. You're excessible for any other valid and applicable insurance that applies to this law's. I agree with you. You wouldn't look at policies that don't apply to this law's. No doubt. Judge Berman said, look, we've looked at all the policies that apply to this law's, and you said you're excessible for all those other policies. And that's what his role is in looking at insurance policies. Now, look, if they want to pursue some kind of indemnity agreement, they think they have something, you know, it's not correct, they have some indemnity agreement, they want to pursue it. I'm not stopping them from doing whatever they think is appropriate. That's not this case. This case only deals with the priority of insurance coverage. Do you have a position on Judge Bianco's suggestion that maybe we could certify it to the New York Court of Appeals? Listen, I'd be happy to argue this case before the New York State Court of Appeals. They have Lemoro, which has been a rule of law in New York forever. You may not think it's equivalent, but there's no indemnity agreements involved. I say to you, I disagree respectfully. I'd be happy to take this case to the New York State Court of Appeals. If they change Lemoro, it would be a monumental change in insurance law in New York State. These rules have been in place since 1985, and there isn't a single case, there isn't a single case, I suggest respectfully, where there wasn't a settlement agreement on these two cases that Judge Harmon discussed, the insurance indemnity cases, the indemnity insurance cases. There isn't a single case where the courts have said, we're going to govern, we're going to measure, we're going to decide on the insurance question based on indemnity. Different universes, different places, not the law in New York. I respect this amendment. Thank you very much. Thank you. Unless you have any further questions. Thank you. Ms. Hayes, you have two minutes and rebuttal. I would just simply note that the Centuries Council has spent a lot of time arguing that insurance provisions and indemnity agreements are completely separate from each other and there's no crossover whatsoever. But the Arch case and the indemnity case clearly state that there is a crossover in terms of determining priority coverage. He does mention that other cases that seem to overrule or conflict with arch indemnity, although I'm not sure where they are. Can you just address the argument about why it makes logical sense? So there's some intuitive appeal to the argument that insurance policies are insurance policies and trade contracts are trade contracts and so we should understand the insurance policy only with respect to the insurance policy and leave the trade contract question to a separate proceeding. I understand that your argument is we have these two cases that suggest we should do that, but why does that make sense? I would say that trade agreements first are used a lot in construction worksites for this particular reason and a lot of liability and risks are based off of these contractual agreements amongst the parties and it's not asking the insurance companies to accept coverage for something that they don't cover. Again, Centuries policy may need to be adjudicated that it does respond to it, but in terms of, again, it did get the benefit of being an excess policy to the primary policy below it. So it's not being injured, it's not being prejudiced. It did get to the arch policy, the primary policy, to pay out first before it's being asked to call on it. And simply, since, for instance, I think one of the cases that talked about that's not in the 28th Circuit was that it discussed how the trade agreements closely deal with indemnity agreements and procuring insurance and are closely related, but the parties are trying to dictate what the other parties are doing. So I would say that in order to allow construction and transfer of risks, that you need to look to the indemnity policies as to allow the party that is shouldering that liability to have those policies respond first in the order that those policies act up against each other. So it's not asking them to do something that they otherwise wouldn't be required to do. It's simply just saying that you can't be an excess to anything and everything. All right. Thank you very much, Ms. Davis. Thank you both. A reserved decision. Have a good day. The last case on the calendar today, as I said, is down the Eckert, which is on submission. So that completes the business of the Court. And with thanks, I'll ask Ms. Wadley to return to the Court. Thank you. Thank you. Thank you. Thank you.